UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x

JEAN-MARC RICHARDSON,                       :

                     Petitioner,    :

        -against-                         :

CHRISTOPHER SHANAHAN, et al.,               :

                     Respondents.   :

------------------------------------x

15 Civ. 4405 (AJP)

**OPINION & ORDER**

**ANDREW J. PECK, United States Magistrate Judge:**

        Petitioner Jean-Marc Richardson, represented by Brooklyn Defender Services, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241 from his October 17, 2014 detention by the United State Department of Homeland Security ("DHS"), Bureau of Immigration and Customs Enforcement ("ICE"). (Dkt. No. 1: Pet. ¶¶ 1, 23.) Richardson is detained pursuant to § 236(c) of the Immigration and Nationality Act ("INA"), codified at 8 U.S.C. § 1226(c). (Pet. ¶¶ 2, 33.)

        The parties have consented to decision of the case by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Dkt. No. 15: Consent Form.) For the reasons set forth below, Richardson's habeas petition is <u>DENIED</u>.

## FACTS[1]

        Richardson is a "thirty-four year old mentally ill man, a native of Trinidad" who has lived in New York since 1995. (Dkt. No. 1: Pet. ¶ 1.) Richardson has three criminal convictions in New York State (Kings County): on August 4, 2008, Richardson was convicted of criminal weapons possession; on June 10, 2010, he was convicted of criminal sale of marijuana; on

---

[1]     Except where indicated, the facts are not in dispute.

September 23, 2013, he was convicted of criminal weapons possession. (Pet. ¶ 31 & Ex. P; Dkt. No. 11: Love Aff. ¶¶ 5-7.)

On February 10, 2014, while Richardson was serving his criminal sentence, DHS served him with a Notice to Appear, alleging that his convictions rendered him removable on three separate grounds: (1) under INA § 237(a)(1)(B) for remaining in the United States longer than permitted by his nonimmigrant visa, (2) under INA § 237(a)(2)(C) for a firearm conviction, and (3) under INA § 237(a)(2)(B)(i) for a controlled substance conviction. (Pet. ¶ 32 & Ex. O: Notice to Appear; Love Aff. ¶ 8.)

On March 3, 2014, Richardson appeared pro se via video teleconference before an Immigration Judge ("IJ") for his first master calendar hearing. (Love Aff. ¶ 9.) The IJ adjourned the matter so that Richardson could retain counsel. (Id.)

On May 5, 2014, represented by counsel, Richardson appeared via video teleconference before the IJ, admitted the factual allegations against him and conceded his removability. (Pet. Ex. Q: Vendzules Aff. ¶ 3; Love Aff. ¶ 10.) The IJ adjourned the matter so that Richardson's attorney could prepare a U visa application for relief from removal. (Vendzules Aff. ¶ 3; Love Aff. ¶ 10.) On July 7, 2014, a master calendar hearing was adjourned at Richardson's counsel's request. (Vendzules Aff. ¶ 4; Love Aff. ¶ 11.)

On July 18, 2014, Richardson applied for a U visa. (Vendzules Aff. ¶ 4.) On August 4, 2014, the IJ adjourned the matter until October 6, 2014, pending adjudication of Richardson's U visa application. (Vendzules Aff. ¶ 4; Love Aff. ¶ 12.)[2] On September 29, 2014, Richardson moved

---

[2] On November 25, 2014, Richardson received a notice that he is prima facie eligible for a U visa. (Vendzules Aff. ¶ 45.) Nonetheless, the United States Citizenship and Immigration Service issued Richardson two Requests for Evidence ("RFEs") on November 3, 2014.
(continued...)

to terminate removal proceedings or alternatively to administratively close the proceedings pending resolution of his U visa application. (Vendzules Aff. ¶ 4; Love Aff. ¶ 13.) On October 6, 2014, the IJ denied the motion. (Vendzules Aff. ¶ 5; Love Aff. ¶ 14.)

    On October 17, 2014, Richardson was transferred from state criminal custody to DHS custody at the Buffalo Federal Detention Facility in Batavia, New York. (Pet. ¶ 1; Love Aff. ¶ 15; Vendzules Aff. ¶ 7.) On October 8, 2014, Richardson moved to change venue to the immigration court at 201 Varick Street in Manhattan. (Pet. ¶ 40; Vendzules Aff. ¶ 6; Love Aff. ¶ 17.) On October 22, 2014, DHS filed a motion to change venue to the Batavia Immigration Court. (Pet. ¶ 40; Love Aff. ¶ 16.) On October 27, 2014, the IJ denied DHS's motion and granted Richardson's motion. (Pet. ¶ 40; Love Aff. ¶ 18.)

    DHS's standard procedure has been to transfer Richardson to the New York City area for scheduled court appearances. (Pet. ¶ 40; Vendzules Aff. ¶ 8.) DHS did not produce Richardson for master calendar hearings on November 10 and 17, 2014, because Richardson had not yet been transferred from Batavia, New York, and in both instances, the IJ adjourned the proceeding for a week. (Pet. ¶ 41; Love Aff. ¶ 19; Vendzules Aff. ¶¶ 9-10.) On November 24, 2014, DHS did not produce Richardson for the scheduled calendar call, "due to weather conditions in the Buffalo area," and the matter was adjourned for another week. (Love Aff. ¶ 20; Pet. ¶ 42; Vendzules Aff. ¶ 11.) Similarly, on December 1, 2014, DHS again did not produce Richardson, apparently because he had

---

2/ (...continued)
(Vendzules Aff. ¶ 46.) Although originally due on January 29, 2015 (id.), Richardson did not complete his responses until May 4, 2015 (Vendzules Aff. ¶ 58). Richardson's counsel attributes the delays to difficulties finding and coordinating between a surgeon and psychiatrist whose opinions were necessary to comply with the RFE (see Vendzules Aff. ¶¶ 47-57), although Richardson argues that "DHS's tactics have delayed adjudication of [his] pending U-Visa application" (Dkt. No. 5: Richardson Br. at 17).

not yet been transferred from Batavia. (Pet. ¶ 42; Vendzules Aff. ¶ 12.)

On December 10, 2014, Richardson appeared with counsel at a master calendar hearing, at which the IJ scheduled a hearing on Richardson's mental competency for February 24, 2015. (Pet. ¶ 43; Love Aff. ¶ 22; Vendzules Aff. ¶ 15.) On December 12, 2014, DHS filed a second motion to change venue to the Batavia immigration court. (Pet. ¶ 47; Love Aff. ¶ 24; Vendzules Aff. ¶ 21.) Richardson's counsel opposed the motion "because it would make it impossible for her to represent Mr. Richardson in immigration court, and also because it would make it much more difficult to access her client to respond to the [Request for Evidence] in the pending U visa case." (Pet. ¶ 47; Vendzules Aff. ¶ 21.) On December 16, 2014, Richardson requested a hearing on the issue, which was scheduled for January 8, 2015. (Pet. ¶ 47; Vendzules Aff. ¶ 23.) On January 7, 2015, that hearing was postponed until January 21, 2015. (Pet. ¶ 47; Vendzules Aff. ¶¶ 28-29, 31.)

At a master calendar hearing on January 21, 2015, the IJ denied DHS's second motion to change venue. (Pet. ¶ 49; Love Aff. ¶ 25; Vendzules Aff. ¶ 34.) During a seventh master calendar hearing on February 3, 2015, at which Richardson appeared with counsel, DHS announced that it would continue to house Richardson at Batavia, alleging that the facility was better equipped to deal with his mental health issues. (Pet. ¶ 50; Vendzules Aff. ¶ 36; Love Aff. ¶ 26.) The IJ adjourned the competency hearing originally scheduled for February 24, 2015. (Pet. ¶¶ 50-51; Love Aff. ¶¶ 26-27.)

At an eighth master calendar hearing on March 3, 2015, DHS requested that a new competency hearing be scheduled, and with Richardson's consent the IJ set an April 30, 2015 hearing date. (Pet. ¶ 52; Love Aff. ¶ 28; Vendzules Aff. ¶ 37.) On April 22, 2015, however, Richardson requested that the competency hearing be canceled because a mental health evaluation had found him competent. (Pet. ¶ 52; Love Aff. ¶ 29; Vendzules Aff. ¶ 38.) The April 30, 2015

competency hearing was converted to a master calendar hearing, at which Richardson announced his intention to apply for asylum, withholding of removal, and relief under the Convention Against Torture.  (Pet. ¶¶ 52-53;Vendzules Aff. ¶ 39; Love Aff. ¶ 30.)  The IJ adjourned proceedings until June 1, 2015 so that Richardson could prepare his applications.  (Pet. ¶ 53; Vendzules Aff. ¶ 40.)

On June 1, 2015, DHS again failed to produce Richardson for a master calendar hearing.  (Pet. ¶ 54; Love Aff. ¶ 31; Vendzules Aff. ¶ 42.)  According to DHS, "Richardson was not produced due to a miscommunication between ICE and the transportation contractor."  (Love Aff. ¶ 31.)  The IJ adjourned the hearing until June 8, 2015.  (Pet. ¶ 55; Love Aff. ¶ 31.)  On June 8, 2015, Richardson appeared with counsel before the IJ for a master calendar hearing.  (Love Aff. ¶ 32.)  Richardson filed an application for relief from removal, and the IJ continued the matter for an individual hearing on the merits of Richardson's application.  (Id.)  Richardson's individual hearing was scheduled for September 17, 2015 (Love Aff. ¶ 33), but was advanced two weeks, taking place instead on September 2, 2015 (Dkt. No. 16: 9/3/15 McCarthy Ltr.).  Following the hearing, the IJ adjourned proceedings until October 27, 2015, when he intends to issue a decision on Richardson's application for relief from removal.  (9/3/15 McCarthy Ltr.)

Richardson, represented by Brooklyn Defender Services, filed this habeas petition on June 8, 2015 while Richardson was physically present in this District in DHS custody.  (Pet. ¶ 22.)  Richardson argues that his ongoing detention without an individualized bond hearing violates the Fifth Amendment Due Process Clause.  (Pet. ¶¶ 60-66; Richardson Br. at 13-21.)

## ANALYSIS

I.      **JURISDICTION**

Richardson filed this habeas petition on June 8, 2015, when he was present in this District to attend immigration court proceedings.  (Dkt. No. 1: Pet. ¶ 22.)  This Court has subject

6

matter jurisdiction over Richardson's habeas corpus petition pursuant to 28 U.S.C. § 2241.  See Rumsfeld v. Padilla, 542 U.S. 426, 443, 124 S. Ct. 2711, 2722 (2004) ("jurisdiction lies in only one district: the district of confinement"); Guo v. Napolitano, 9 Civ. 3023, 2009 WL 2840400 at *5 (S.D.N.Y. Sept. 2, 2009) (jurisdiction over a habeas petition is established at the time the petition is filed).  The government does not dispute the Court's jurisdiction. (See generally Dkt. No. 10: Gov't Opp. Br.)

## II. THE CONSTITUTIONAL FRAMEWORK GOVERNING MANDATORY DETENTION PENDING REMOVAL

"[F]ederal law contains two distinct provisions governing an alien's detention while removal proceedings are pending."  Straker v. Jones, 986 F. Supp. 2d 345, 351 (S.D.N.Y. 2013); see 8 U.S.C. § 1226(a), (c).  The first provision provides for detention during removal proceedings subject to an individualized bond hearing.  8 U.S.C. § 1226(a).[3/]  Under the second provision, entitled "Detention of criminal aliens," aliens falling within certain enumerated categories "shall" be mandatorily detained without a hearing.  8 U.S.C. § 1226(c).[4/]  "The mandatory detention provision does not reflect a general policy in favor of detention; instead, it outlines specific, serious circumstances under which the ordinary procedures for release on bond at the discretion of the immigration judge should not apply."  Saysana v. Gillen, 590 F.3d 7, 17 (1st Cir. 2009).

---

[3/] See, e.g., Straker v. Jones, 986 F. Supp. 2d at 351 ("Section 1226(a) allows federal immigration authorities to detain an alien during removal proceedings, subject to a bond hearing.").

[4/] See, e.g., Straker v. Jones, 986 F. Supp. 2d at 351 ("Section 1226(c), entitled 'Detention of criminal aliens,' however, provides for mandatory detention of certain criminal aliens. Immigration authorities may not provide such aliens with a bond hearing.").

7

In relevant part, the mandatory detention provision of § 1226(c) provides:

The Attorney General[5/] shall take into custody any alien who–

>   (A) is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title,
>
>   (B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title,
>
>   (C) is deportable under section 1227(a)(2)(A)(i) of this title on the basis of an offense for which the alien has been sentence[d] to a term of imprisonment of at least 1 year, or
>
>   (D) is inadmissible under section 1182(a)(3)(B) of this title or deportable under section 1227(a)(4)(B) of this title,

when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

8 U.S.C. § 1226(c)(1) (fn. added).

In Demore v. Kim, the Supreme Court rejected a challenge to § 1226(c)(1) under the Fifth Amendment Due Process Clause, holding that mandatory detention for a "limited period" during removal proceedings is constitutional. Demore v. Kim, 538 U.S. 510, 526-31, 123 S. Ct. 1708, 1719-22 (2003).[6/]

The Supreme Court held that "'[i]t is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings,'" but that "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process." Demore v.

---

[5/]   "Originally, the authority and duties imposed by § 1226(c) were those of the Attorney General; today, they belong to DHS," the Department of Homeland Security. Straker v. Jones, 986 F. Supp. 2d at 351.

[6/]   See also, e.g. Hylton v. Shanahan, 15 Civ. 1243, 2015 WL 3604328 at *4 (S.D.N.Y. June 9, 2015); Araujo-Cortes v. Shanahan, 35 F. Supp. 3d 533, 546-47 (S.D.N.Y. 2014); Debel v. Dubois, 13 Civ. 6028, 2014 WL 1689042 at *5 (S.D.N.Y. Apr. 24, 2014)

Kim, 538 U.S. at 523, 123 S. Ct. at 1717.  The Supreme Court noted that "[u]nder § 1226(c), not only does detention have a definite termination point, in the majority of cases it lasts for less than . . . 90 days," and pointed out that "in 85% of the cases in which aliens are detained pursuant to § 1226(c), removal proceedings are completed in an average time of 47 days and a median of 30 days."  Demore v. Kim, 538 U.S. at 529, 123 S. Ct. at 1720-21.  According to the Supreme Court, "[i]n sum, the detention at stake under § 1226(c) lasts roughly a month and a half in the vast majority of cases in which it is invoked, and about five months in the minority of cases in which the alien chooses to appeal."  Demore v. Kim, 538 U.S. at 530-31, 123 S. Ct. at 1721.

Nonetheless, "the Supreme Court did not specify an outer limit as to what constitutes a permissible detention period."  Baker v. Johnson, 14 Civ. 9500, --- F. Supp. 3d ----, 2015 WL 2359251 at *11 (S.D.N.Y. May 15, 2015); see also, e.g., Vaskovska v. Holder, No. 14-CV-270, 2014 WL 4659316 at *3 (W.D.N.Y. Sept. 17, 2014); Johnson v. Orsino, 942 F. Supp. 2d 396, 409 (S.D.N.Y. 2013); Adreenko v. Holder, 09 Civ. 8535, 2010 WL 2900363 at *3 (S.D.N.Y. June 25, 2010).

Following Demore v. Kim, "[i]n order to avoid running afoul of the Due Process Clause, numerous United States Courts of Appeals have interpreted section 1226(c) to contain an implicit limitation on unreasonable or unjustified detention."  Johnson v. Orsino, 942 F. Supp. 2d at 408 (collecting cases); see also, e.g., Baker v. Johnson, 2015 WL 2359251 at *12; Adler v. U.S. Dep't of Homeland Sec., 09 Civ. 4093, 2009 WL 3029328 at *2 & n.21 (S.D.N.Y. Sept. 22, 2009).  "Although the Second Circuit has yet to address this constitutional issue in a published opinion, numerous district courts in this circuit have adopted analogous interpretations of section 1226(c)."

Johnson v. Orsino, 942 F. Supp. 2d at 408 (collecting cases).[7]

"[M]ost courts have not set out a precise length of detention that necessarily presents constitutional problems but have rather considered the 'totality of the circumstances ' of each case to determine whether a particular detention is 'unreasonable or unjustified.'" Baker v. Johnson, 2015 WL 2359251 at *12; see also, e.g, Hylton v. Shanahan, 2015 WL 3604328 at *5 ("Other courts in this district and in other circuits have held that the reasonableness of the duration of detention turns on 'factors such as which party bears responsibility for the prolonged detention, whether the continued duration of the detention is finite or near conclusion, and the interests served by continued detention.'"); Araujo-Cortes v. Shanahan, 35 F. Supp. 3d at 548-49 ("[C]ontrary to the government's argument the legal analysis does not simply turn on the duration of the detention. Rather, 'the Court must assess the duration of the detention in proper context, considering factors such as which party bears responsibility for the prolonged detention, whether the continued detention is finite or near conclusion, and the interest served by continued detention.'"); Johnson v. Orsino, 942 F. Supp. 2d at 409 ("'[T]he legal analysis here does not involve simple arithmetic.' Rather, the Court must assess the duration of the detention in proper context . . . ." (citation omitted)).

Under the prevailing reasonableness approach, which this Court adopts, "the Court must assess the duration of the detention in proper context, considering factors such as which party bears responsibility for the prolonged detention, whether the continued duration of the detention is finite or near conclusion, and the interests served by continued detention." Johnson v. Orsino, 942 F. Supp. 2d at 409; see also, e.g., Hylton v. Shanahan, 2015 WL 3604328 at *5; Baker v. Johnson,

---

[7]   See also, e.g., Baker v. Johnson, 2015 WL 2359251 at *12; Araujo-Cortes v. Shanahan, 35 F. Supp. 3d at 546-47; Debel v. Dubois, 2014 WL 1689042 at *5; Adler v. U.S. Dep't of Homeland Sec., 2009 WL 3029328 at *2 & n.22.

10

2015 WL 2359251 at *12; Vaskovska v. Holder, 2014 WL 4659316 at *3; Araujo-Cortes v. Shanahan, 35 F. Supp. 3d at 548-49.[8/] "[T]he principal factor considered in constitutional review of detention pending removal proceedings is the degree to which the proceedings have been prolonged by unreasonable government action." Debel v. Dubois, 2014 WL 1689042 at *5; see also, e.g., Young v. Aviles, 15 Civ. 4545, 2015 WL 4579204 at *1 (S.D.N.Y. July 29, 2015); Hylton v. Shanahan, 2015 WL 3604328 at *5 ("[C]ourts have scrutinized carefully whether the proceedings have been prolonged by unreasonable government action.").

### III. RICHARDSON'S DETENTION WITHOUT BAIL DOES NOT VIOLATE HIS DUE PROCESS RIGHTS

DHS detained Richardson on October 17, 2014. (See page 3 above.) By the time the IJ rules on Richardson's request for relief from removal on October 27, 2015 (see page 5 above), he will have been in detention for a year. This is double the length of detention the Supreme Court found reasonable in Demore v. Kim and double the amount of time the Court contemplated

---

[8/] "Some courts have taken the position that aliens cannot be detained longer than six months without a bond hearing." Hylton v. Shanahan, 2015 WL 3604328 at *5 (citing Rodriguez v. Robbins, 715 F.3d 1127, 1139 (9th Cir. 2013), & Gordon v. Shanahan, 15 Civ. 261, 2015 WL 1176706 at *4 (S.D.N.Y. Mar. 13, 2015)). Richardson urges the Court to adopt this bright-line approach instead of the reasonableness approach because it "supplies much-needed guidance to the district courts and avoids forcing frequently unrepresented and non-English speaking detainees into complicated federal court litigation in order to vindicate their rights under the Due Process Clause." (Dkt. No. 12: Richardson Reply Br. at 1-2; see also Dkt. No. 5: Richardson Br. at 10-15.) This argument is unpersuasive. Richardson has identified no cases from district courts in this Circuit that exclusively relied on the bright-line approach. (See Richardson Br. at 12-15; Richard Reply Br. at 2.) Indeed, in Gordon v. Shanahan, the district court did not adopt the bright-line approach, but instead held that "[r]egardless of the approach applied, the outcome in this case is the same," then applied both analyses to determine that the petitioner was entitled to a bond hearing. Gordon v. Shanahan, 2015 WL 1176706 at *4-5. Finally, in Demore v. Kim, "the Supreme Court did not specify an outer limit as to what constitutes a permissible detention period." Baker v. Johnson, 2015 WL 2359251 at *11 (citing Demore v. Kim, 538 U.S. at 530, 123 S. Ct. at 1721); see cases cited at page 8 above. The Court declines to adopt the bright-line approach.

11

detention generally lasting in "the minority of cases" with prolonged detention. Demore v. Kim, 538 U.S. 510, 530-31, 123 S. Ct. 1708, 1721 (2003); see also, Baker v. Johnson, 14 Civ. 9500, --- F. Supp. 3d ----, 2015 WL 2359251 at *12 (S.D.N.Y. May 15, 2015).

Nonetheless, courts in this Circuit routinely have found periods of detention comparable to or greater than Richardson's to be constitutional. See, e.g., Hylton v. Shanahan, 15 Civ. 1243, 2015 WL 36044328 at *1, *5-6 (S.D.N.Y. June 9, 2015) (23 month detention constitutional); Baker v. Johnson, 2015 WL 2359251 at *13 (11 month detention at time of filing and likely 15-17 month total detention constitutional); Vaskovska v. Holder, No. 14-CV-270, 2014 WL 4659316 at *1-4 (W.D.N.Y. Sept. 17, 2014) (15 month detention by date opinion issued constitutional); Debel v. Dubois, 13 Civ. 6028, 2014 WL 1689042 at *6 (S.D.N.Y. Apr. 24, 2014) (18 month detention constitutional even though total detention time ultimately was "likely" to exceed 2 years); Johnson v. Orsino, 942 F. Supp. 2d, 396, 408-10 (S.D.N.Y. 2013) (15 month detention constitutional); Johnson v. Phillips, No. 10-CV-480, 2010 WL 6512350 at *6-7 (W.D.N.Y. Dec. 20, 2010) (17 month detention), report & rec. adopted, 2011 WL 1465448 (W.D.N.Y. Apr. 18, 2011); Luna-Aponte v. Holder, 743 F. Supp. 2d 189, 197 (W.D.N.Y. 2010) (detention for over 3 years constitutional); Adreenko v. Holder, 09 Civ. 8535, 2010 WL 2900363 at *3-4 (S.D.N.Y. June 25, 2010) (13 month detention constitutional); Adler v. U.S. Dep't of Homeland Sec., 09 Civ. 4093, 2009 WL 3029328 at *2 (S.D.N.Y. Sept. 22, 2009) (15 month detention constitutional).

A.   **DHS Has Not Unreasonably Delayed Richardson's Detention**

Richardson argues that his "removal proceedings have suffered unreasonable delays from the outset" and that "DHS clearly bears the fault for the delay in proceedings, as it insisted on detaining him in a facility located a six hour drive from [his] removal proceedings in New York City." (Dkt. No. 5: Richardson Br. at 16-17; see Dkt. No. 12: Richardson Reply Br. at 7-9.) The

core of Richardson's argument is that because "DHS has decided to detain [him] in Buffalo, it cannot absolve itself of responsibility for delays that its decision has caused." (Richardson Reply Br. at 9.)

It is undisputed that Richardson suffers from serious mental health issues. DHS detained Richardson at the Buffalo Federal Detention Facility because it is "a facility that can attend to his medical needs." (Dkt. No. 10: Gov't Opp. Br. at 11; see also Dkt. No. 1: Pet. Ex. L: Shanahan 12/17/14 Ltr.; Dkt. No. 11: Love Aff. ¶ 23 ("ICE returned Richardson to Buffalo Federal Detention Facility after the December 10, 2014 hearing out of operational need and because that facility was best suited to care for Richardson's medical and mental health needs."); see also Pet. Ex. Q: Vendzules Aff. ¶ 36.) Richardson has produced no evidence that DHS's determination that the Buffalo Federal Detention Facility can best accommodate his medical needs was unreasonable.[9]

Furthermore, DHS's failures to produce Richardson for immigration court hearings each resulted in a delay of about a week. (See pages 3-5 above.) Moreover, where DHS has offered explanations for the delays, they are consistent with its argument that the delays resulted from bad

---

[9] Richardson argues that Shanahan's letter "provides no support for DHS's contention that Buffalo is better suited to meet [Richardson's mental health] treatment needs" because "at the time of Shanahan's letter, ICE claimed that Mr. Richardson had to be detained at Buffalo because he walked on crutches" and "DHS's rationale changed once it became clear that Mr. Richardson no longer required crutches." (Richardson Reply Br. at 9.) The letter, however, does not address only crutches; it states that the "medical staff at Batavia, as well as Immigration Health Service Corps (IHSC) is aware of [Richardson's] medical history and has advised ICE that Mr. Richardson will continue to receive the necessary medical attention and medications for his conditions." (Shanahan 12/17/14 Ltr.) By the time Shanahan wrote the letter on December 17, 2014, the IJ had scheduled a hearing on Richardson's mental competency. (See page 4 above.) Moreover, DHS undoubtedly was aware of Richardson's mental health issues prior to detaining him on October 17, 2014 (see page 3 above), since Richardson's counsel served both the immigration court and DHS with a copy of his U visa application -- which included evidence of his history of mental illness -- on July 30, 2014 (see Pet. Ex. J: Vendzules 12/9/14 Ltr). Furthermore, Richardson concedes that DHS's counsel represented to the IJ on February 3, 2015 that "DHS would continue to house Mr. Richardson at Batavia as that facility was better equipped to deal with his mental health issues." (Vendzules Aff. ¶ 36.)

13

weather and the logistical challenges posed by the "difficult problem" of housing Richardson in an appropriate facility. (Gov't Opp. Br. at 11; see pages 3-5 above.)[10/] A few weeks of delays caused by logistical problems related to transporting Richardson from the detention facility to immigration court do not demonstrate that DHS has so unreasonably prolonged his removal proceedings as to violate his due process rights. See, e.g., Debel v. Dubois, 13 Civ. 6028, 2014 WL 1689042 at *6 (S.D.N.Y. Apr. 24, 2014) (denying habeas to petitioner who had been detained "approximately one year" because there was "no evidence that the immigration authorities . . . unreasonably prolonged [petitioner's] removal proceedings and consequent detention" where "[o]nly one five-week delay -- resulting from 'logistical problems involving a change in detention location' -- was attributable to the Government").

Indeed, the largest single cause of delay in Richardson's case was his mental competency evaluation. The IJ first raised Richardson's competency on December 10, 2014 and the issue was not resolved until April 30, 2015, four and a half months later. (See pages 4-5 above.) This accounts for approximately half the time Richardson had been detained when he filed this habeas petition on June 8, 2015 and approximately one-third of the total time he will have been detained by the time of his next immigration court appearance on October 27, 2015. Richardson has not established that the delays related to his mental competency evaluation occurred because "DHS's actions clearly impeded the inquiry" or that DHS acted unreasonably. (Richardson Reply Br. at 6.) Richardson argues that because "it was unclear from one day to the next where [he] would be detained, it was impossible to schedule an appointment with a forensic psychologist" for a

---

[10/] DHS, however, has not explained why it failed to produce Richardson for his December 1, 2014 hearing. (See page 3 above.) Nonetheless, this resulted in a delay of only nine days; Richardson appeared in immigration court on December 10, 2014. (See page 4 above.)

14

competency evaluation and that "[d]ue to these delays, the forensic psychologist's report was not completed until April 20, 2015." (Pet. ¶ 51.)[11/] During this period, however, Richardson was held in the Buffalo Federal Detention Facility except when temporarily transferred to the New York City area for court appearances. (See pages 3-4 above.) Moreover, DHS informed Richardson's counsel in mid-December 2014 that Richardson would be taken back to the Buffalo Federal Detention Facility rather than detained at a facility closer to New York City (Pet. ¶ 45), and on February 3, 2015, DHS announced that it would continue to house Richardson at the Buffalo facility (Pet. ¶ 50).[12/]

Similarly, Richardson has not shown that DHS has caused any unreasonable delay in his ability to comply with its RFEs in connection with his U visa application. Indeed, Richardson's counsel concedes that she did not identify a qualified surgeon or psychiatrist local to the Buffalo Federal Detention Facility for nearly eight weeks after first receiving the RFEs in early November 2014. (See Vendzules Aff. ¶¶ 46-49.) Similarly, DHS is not responsible for the two month delay in providing the surgeon with Richardson's psychiatric examination results (see Vendzules Aff. ¶ 52), nor has Richardson's counsel offered any explanation why she waited

---

[11/] Richardson also claims that "[w]hile many doctors in the New York City area are willing and able to travel to local detention facilities, there are few doctors working in Upstate New York who are willing to travel to Batavia." (Pet. ¶ 51.) Richardson has not explained how any delay caused by his counsel's difficulties locating a suitable psychiatrist are DHS's fault, especially since his counsel did locate an appropriate psychiatrist in late December 2014 who performed the examination in late January 2015. (See Vendzules Aff. ¶¶ 24, 30-32, 35.) Nor is the delay between Richardson's examination and the psychologist issuing his final report on April 20, 2015 (see Vendzules Aff. ¶ 38) attributable to DHS.

[12/] Richardson also repeatedly argues that DHS's motions to change venue to the immigration court in Batavia caused unreasonable delays. (See Richardson Br. at 17; Richardson Reply Br. at 6, 8.) Richardson has cited no case law to support his assertion that DHS's efforts to transfer the case to a court closer to the site of Richardson's detention were somehow unreasonable.

15

until late February 2015 to request necessary medical records from the medical center at the Buffalo Federal Detention Facility (see Vendzules Aff. ¶¶ 53-54).[13]

### B. Richardson's Good Faith Pursuit Of Claims For Relief Does Not Make His Continued Detention Unconstitutional

Richardson asserts that he "has a strong claim for relief in the form of asylum, withholding of removal, and relief under the Convention against Torture" because as "a deportee and sufferer of mental illness, he faces a significant likelihood of persecution and torture if deported to Trinidad." (Dkt. No. 5: Richardson Br. at 18.) In addition, Richardson "has a pending application for a U visa, which provides legal status for noncitizens who have been victims of crimes and assisted law enforcement in prosecuting their attackers." (Id.) Richardson argues that "[b]ased on his strong claims for relief and the likelihood of appeal, there is no evidence his proceedings will end soon." (Dkt. No. 12: Richardson Reply Br. at 4.)[14] Although Richardson "indisputably 'has every right to seek any relief from deportation for which he may be eligible, delay caused by his actions does not make continued detention unreasonable or unjustified.'" Johnson v. Orsino, 942 F. Supp. 2d 396, 409 (S.D.N.Y. 2013); see also, e.g., Demore v. Kim, 538 U.S. 510, 530-31, 123 S. Ct. 1708, 1721 (2003) ("Respondent was detained for somewhat longer than the average . . . but

---

[13]  Richardson successfully completed his response to the U visa RFE on May 4, 2015 and his application remains pending. (Vendzules Aff. ¶ 58.) Thus, even if Richardson ultimately qualifies for a U visa and therefore relief from removal, his application process will have included several months of processing time unrelated to any delay in his responses to the RFEs. As discussed below, delays caused by his pursuit of relief from removal do not render his continued detention unreasonable or unjustified. (See section III.B below.)

[14]  DHS concedes that Richardson has not sought to delay his proceedings or engage in dilatory tactics. (Dkt. No. 10: Gov't Opp. Br. at 11 ("Richardson states that '[a]t no point . . . has he sought to delay his proceedings' . . . but that fact -- true thought it may be -- does not give rise to a due process violation. While Richardson surely has not 'sought' delay, the creation of some delay is an expected and unavoidable consequence of pursuing relief from removal." (record citation omitted)).)

respondent himself had requested a continuance of his removal hearing."); Hylton v. Shanahan, 15 Civ. 1243, 2015 WL 3604328 at *5 (S.D.N.Y. June 19, 2015) (petitioner's detention constitutional despite extended delays because, inter alia, "his detention has been prolonged in large part due to the granting of [petitioner's] requests for time to seek representation, to prepare adequately for each conference before the immigration judge, to prepare his case in opposition to removal, and to seek relief from the removal order."); Baker v. Johnson, 14 Civ. 9500, --- F. Supp. 3d ----, 2015 WL 2359251 at *13 (S.D.N.Y. May 15, 2015); Adreenko v. Holder, 09 Civ. 8535, 2010 WL 2900363 at *4 (S.D.N.Y. June 25, 2010); Adler v. U.S. Dep't of Homeland Sec., 09 Civ. 4093, 2009 WL 3029328 at *2 (S.D.N.Y. Sept. 22, 2009) ("Although it is [petitioner's] right to seek relief from deportation, the delays caused by his motions should not be attributed to the government."). Delays related to Richardson's requests for relief are not attributable to the government and do not provide a basis for habeas relief.

      **C.**      **Richardson's Detention Is Not Indefinite**

Richardson's next appearance before the IJ is October 27, 2015, when the IJ intends to rule on his request for relief from removal. (See page 5 above.) Richardson argues that "[i]rrespective of which side wins, the loser will almost certainly appeal, and Mr. Richardson will be forced to remain incarcerated through the pendency of the appeal," a process that he asserts "can take months and even years." (Dkt. No. 5: Richardson Br. at 19.)

"Delays attributable to normal consideration of an alien's appeal of adverse decisions do not render unreasonable the consequent delay of his ability to gain release into his home country." Hylton v. Shanahan, 15 Civ. 1243, 2015 WL 3604328 at *6 (S.D.N.Y. June 19, 2015); see also, e.g., Demore v. Kim, 538 U.S. 510, 530 n.14, 123 S. Ct. 1708, 1721 n.14 (2003) ("Respondent contends that the length of detention required to appeal may deter aliens from

17

exercising their right to do so. As we have explained before, however, the legal system . . . is replete with situations requiring the making of difficult judgments as to which course to follow, . . . and . . . there is no constitutional prohibition against requiring parties to make such choices." (citations & quotations omitted)); Baker v. Johnson, 14 Civ. 9500, --- F. Supp. 3d ----, 2015 WL 2359251 at *13 (S.D.N.Y. May 15, 2015) (detention reasonable even though petitioner has already been detained for 11 months and anticipated an appeal taking 4 to 6 months, for "a total detention period that could last up to fifteen to seventeen months," because to "the extent the proceedings are extended by appeals or motion practice initiated by Petitioner, 'the Court properly takes into account the fact that [Petitioner's] continued detention' may be at least in part 'a result of [his] choice to appeal.'"); Vaskovska v. Holder, No. 14-CV-270, 2014 WL 4659316 at *3 (W.D.N.Y. Sept. 17, 2014); Debel v. Dubois, 13 Civ. 6028, 2014 WL 1689042 at *6 (S.D.N.Y. Apr. 24, 2014); Johnson v. Orsino, 942 F. Supp. 2d 396, 410 (S.D.N.Y. 2013); Luna-Aponte v. Holder, 743 F.Supp. 2d 189, 197 (W.D.N.Y. 2010) ("The issue before the Court, therefore, is whether Petitioner's detention, under INA § 236(c), for more than three years, all of which time is attributable to his attempt to appeal his final order of removal, without a bond hearing, violates the INA and/or the Due Process Clause. The Court finds that it does not."). "Similar considerations apply in connection with delay pending the consideration of a timely Government appeal. . . . [T]he Government's appeal of a decision adverse to it does not, by itself, render detention pending that appeal unreasonable." Hylton v. Shanahan, 2015 WL 3604328 at *6.

        The government asserts that if Richardson "is ultimately found removable, there are no apparent impediments to his deportation to Trinidad and Tobago." (Dkt. No. 10: Gov't Opp. Br. at 13.) Absent any evidence of an impediment to removal, Richardson's detention, though lengthy, will not last indefinitely. See, e.g., Baker v. Johnson, 2015 WL 2359251 at *13; Johnson v. Orsino,

942 F. Supp. 2d at 410-11; Luna-Aponte v. Holder, 743 F. Supp. 2d at 197.[15/]

### D. Conditions Of Detention Are Not A Basis For Granting Habeas Relief

Finally, Richardson claims that he has been "incarcerated in particularly harsh circumstances," because as "a sufferer of mental illness, [he] relies on the love and support of his family to help him cope" -- support which he has been deprived of by the six-hour travel time from New York City to Batavia. (Dkt. No. 5: Richardson Br. at 19.) Richardson further argues that he has "been deprived of consistent access to his legal representation because his counsel is based in New York City." (Id.)

"The law is well-settled that a writ of habeas corpus is not the appropriate legal vehicle for seeking relief based on the conditions of detention. Habeas corpus addresses the validity or duration of custody, not the conditions of detention." Vaskovska v. Holder, No. 14-CV-270, 2014 WL 4659316 at *4 (W.D.N.Y. Sept. 17, 2014) (citations omitted); accord, e.g., Adreenko v. Holder, 09 Civ. 8535, 2010 WL 2900363 at *5 (S.D.N.Y. June 25, 2010); Yusov v. Shaughnessey, 671 F. Supp. 2d 523, 527 (S.D.N.Y. 2009), aff'd, 396 F. App'x 780 (2d Cir. 2010), cert. denied, 131 S. Ct. 2465 (2011); Copes v. McElroy, 98 Cir. 2589, 2001 WL 830673 at *6 (S.D.N.Y. July 23, 2001). Therefore, the Court cannot grant Richardson habeas based on his confinement at a location that is

---

[15/] Courts have found impediments to removal where, for example, there is no repatriation agreement between the United States and a petitioner's home country or a moratorium on deportations to that country exists. See, e.g., Ly v. Hanson, 351 F.3d 263, 266 n.1 (6th Cir. 2003) ("Actual removal of [petitioner] from the United States was never a possibility during this process. Vietnam has not and does not accept deportees because there is no repatriation agreement between the United States and Vietnam."); Montestime v. Reilly, 704 F. Supp. 2d 453, 458-59 (S.D.N.Y. 2010) ("Because of the recent catastrophe in Haiti, [petitioner] faces a likelihood of indefinite detention by ICE. The 18–month moratorium on deportations to Haiti suggests that [petitioner] will be held for at least two years in ICE detention centers without the opportunity to argue for release."). No comparable circumstances exist here.

remote from his family and counsel.[16]

## CONCLUSION

For the reasons set forth above, Richardson's habeas petition (Dkt. No. 1) is <u>DENIED</u>. Should Richardson's confinement continue for a lengthy period, he can bring another habeas petition.

SO ORDERED.

Dated:   New York, New York
         October 6, 2015

_____
**Andrew J. Peck**
United States Magistrate Judge

Copies ECF to: All Counsel

---

[16] The Court notes that aside from Batavia's distance from New York City, Richardson has identified no allegedly improper conditions. Nor is this a case where DHS has detained a petitioner in a state far from where the petitioner lives.